Sandra A. Crawshaw-Sparks, SBN 291101
<scrawshaw@proskauer.com>
Alyson C. Tocicki, SBN 336179
<atocicki@proskauer.com>
PROSKAUER ROSE LLP
2029 Century Park East, 24th Floor
Los Angeles, CA  90067-3010
Telephone:    (310) 557-2900
Facsimile:     (310) 557-2193

Attorneys for Plaintiff
National Academy of Recording Arts &
Sciences, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NATIONAL ACADEMY OF RECORDING ARTS & SCIENCES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CREATIVE COPPEROPOLIS, a California corporation; RICHARD VARRASSO, an individual; EVENT CITY LLC, a California limited liability company; and NOLAN APOSTLE, an individual,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff National Academy of Recording Arts & Sciences, Inc. ("the Recording Academy"), by its attorneys, Proskauer Rose LLP, for its complaint against defendants Creative Copperopolis, Richard Varrasso, Event City LLC, and Nolan Apostle (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.     This is a complaint for trademark infringement, false association, unfair competition, false advertising, and trademark dilution in violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* and trademark infringement, trademark dilution, false advertising, and unfair or deceptive business practices under state law arising out of Defendants' unauthorized use of: (a) the name "CAMMIES"—a name highly similar in sight, sound, appearance, and commercial impression to the GRAMMY® and GRAMMY AWARDS® trademarks; and (b) proprietary artwork associated with the 63rd Annual GRAMMY Awards telecast, including (in at least one instance) a depiction of the world famous GRAMMY Award Statuette associated exclusively with the Recording Academy; in the promotion and marketing of their music awards event, currently scheduled to take place and be livestreamed on January 15, 2022. Defendants' conduct is a patent attempt to unlawfully profit from the unauthorized use of the Recording Academy's long-standing, exclusive rights in the famous GRAMMY brand.

## THE PARTIES

2.     The Recording Academy is a Delaware not-for-profit corporation with its principal place of business located at 3030 Olympic Boulevard, Santa Monica, California 90404.  The Recording Academy has approximately 20,000 members.  For more than 60 years the Recording Academy has represented the individuals who contribute to the creation and exploitation of recorded music, including recording artists, musicians, songwriters and record producers.  Among other activities, the Recording Academy presents the annual GRAMMY Awards®, the only

2

peer-presented awards that honor artistic achievement in the music industry.   The Recording Academy is the owner of the trademarks GRAMMY® and GRAMMY AWARDS®.

3.     On information and belief, Defendant Creative Copperopolis is a California nonprofit mutual benefit corporation with its principal place of business located at 103 Main Street, Copperopolis, California 95228.   Upon further information and belief, Creative Copperopolis has been promoting, organizing and sponsoring an upcoming event and awards ceremony titled the "CAMMIES," with the stated intention of honoring local artists, musicians, bands, performing arts groups, and producers.

4.     On information and belief, Defendant Richard Varrasso is an individual residing in or around Copperopolis, California, and Chief Executive Officer of Creative Copperopolis.

5.     On information and belief, Defendant Event City LLC is a California limited liability company with its principal place of business located at 1124 East Broadway, Suite #773, Glendale, California 91205.   Upon further information and belief, Event City LLC has been, in concert with Creative Copperopolis, promoting, organizing and sponsoring the upcoming "CAMMIES" event.

6.     On information and belief, Defendant Nolan Apostle is an individual residing in or around Millbrae, California, and Founder and Chief Executive Officer of Event City LLC.

7.     On information and belief, Defendants are, or at one time were, seeking to profit from the "CAMMIES" by charging $25 for tickets to the event.

8.     Defendants are not affiliated with the Recording Academy, and the Recording Academy has not consented to, sponsored, endorsed, or approved of Defendants' use of any marks that are confusingly similar to the GRAMMY Trademarks (defined at Paragraph 17, below), proprietary artwork associated with the

3

63rd Annual GRAMMY Awards telecast, or any depiction of the world famous GRAMMY Award Statuette associated exclusively with the Recording Academy, for any purpose, including in connection with the production or marketing of the "CAMMIES," or sale of any products, services or events or presentation of any awards.

## **JURISDICTION AND VENUE**

9.    This action arises under the Lanham Act, a federal statute codified at 15 U.S.C. §§ 1051, *et seq*., and California state law.

10.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a), and 28 U.S.C. §§ 1331, 1332(a)(1), and 1338(a).  This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §§ 1338(b) and 1367(a).

11.    The Recording Academy is informed and believes, and on that basis alleges, that this Court has personal jurisdiction over Defendants because (i) Creative Copperopolis is incorporated in California with the registered address 103 Main Street, Copperopolis, California 95228; (ii) Richard Varrasso is a resident in the State of California; (iii) Event City LLC is incorporated in California with the registered address 1124 East Broadway, Suite #773, Glendale, California 91205; (iv) Nolan Apostle is a resident in the State of California; (v) Defendants conduct business within the State of California; (vi) Defendants have caused their event to be advertised, promoted and sold using a mark that is confusingly similar to the GRAMMY Trademarks, and proprietary artwork associated with the 63rd Annual GRAMMY Awards telecast, including a depiction of the world famous GRAMMY Award Statuette, within the State of California; (vii) the causes of action asserted in this Complaint arise out of Defendants' contacts with the State of California; and (viii) Defendants have caused tortious injury to the Recording Academy in the State of California and this judicial district.

12.    The Recording Academy is informed and believes, and on that basis alleges, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because (i) Creative Copperopolis is incorporated in California with the registered address 103 Main Street, Copperopolis, California 95228; (ii) Richard Varrasso is a resident in the State of California; (iii) Event City LLC is incorporated in California with the registered address 1124 East Broadway, Suite #773, Glendale, California 91205; (iv) Nolan Apostle is a resident in the State of California; (v) Defendants conduct business within the State of California; (vi) Defendants have caused their event to be advertised, promoted and sold using a mark that is confusingly similar to the GRAMMY Trademarks, and proprietary artwork associated with the 63rd Annual GRAMMY Awards telecast, including a depiction of the world famous GRAMMY Award Statuette, within the State of California; (vii) the causes of action asserted in this Complaint arise out of Defendants' contacts with the State of California; and (viii) Defendants have caused tortious injury to the Recording Academy in the State of California and this judicial district.

## **FACTS COMMON TO ALL COUNTS**

**The Recording Academy and the GRAMMY Trademarks**

13.    The Recording Academy has celebrated music through the GRAMMY Awards for more than 60 years, and it is the premier outlet for honoring achievements in the recording arts and supporting the music community.  The annual GRAMMY Awards presentation brings together thousands of creative and technical professionals in the recording industry from all over the world.

14.    Achieving a GRAMMY nomination or GRAMMY Award has been the highest recognition of achievement for sound recording artists and professionals since the first awards were presented in May 1959 to recognize musical excellence in works released the previous year.  From the inception of the awards ceremony, the glamour and prestige associated with the GRAMMY name has been undeniable, as Frank

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Sinatra led the pack of nominees with six nominations and many of music's elite were in attendance at the ceremony that evening, including Sinatra, Sammy Davis Jr., Dean Martin, and Gene Autry.

15.     Today, the GRAMMY Awards is an internationally televised event, which attracts over 25 million viewers annually.   The presenters and recipients of GRAMMY Awards at the most recent ceremony held in March 2021 were some of the biggest names in the music business, including Billie Eilish, John Legend, Lady Gaga, Cardi B, Meghan Thee Stallion, Ariana Grande, Dua Lipa, Harry Styles and Beyoncé, to name a few.

16.     Bestowing a prestigious GRAMMY Award on artists and other industry professionals is not the only way in which the Recording Academy uses the GRAMMY Marks to achieve its mission to positively impact the lives of musicians, industry members and society at large.   The Recording Academy achieves this goal through recognizing the best in music through the GRAMMY Awards and also by establishing itself as one of the preeminent arts advocacy and outreach organizations, which it accomplishes through GRAMMY-branded affiliates such as the GRAMMY Museum, the GRAMMY Museum Foundation, and other affiliates, including MusiCares.

17.     The Recording Academy has used the mark GRAMMY in commerce continuously since at least 1959 and owns numerous trademark registrations for the terms "GRAMMY" and "GRAMMY AWARDS" (collectively, with the GRAMMY Award Statuette (defined below at Paragraph 22), the "GRAMMY Trademarks" or "GRAMMY Marks"):

18.     Among other registrations, the Recording Academy owns the following registrations (collectively, the "GRAMMY Registrations"):

a. U.S. Trademark Registration No. 3,202,214 (first use 1959) for the GRAMMY word mark, which the United States Patent & Trademark

Office ("PTO") issued to the Recording Academy on January 3, 2007 for use in connection with entertainment services, namely, live performances by musical artists and musical groups; entertainment in the nature of televised music awards programs; and an annual awards program for the presentation of awards in recognition of distinguished achievement in the field of music; among other uses.   A true and correct copy of this registration certificate is attached as Exhibit A.

b. U.S. Trademark Registration No. 3,202,218 (first use 1959) for the GRAMMY AWARDS word mark, which the PTO issued to the Recording Academy on January 23, 2007, for use in connection with educational services, namely, providing incentives to people to demonstrate excellence in the field of music and video arts and sciences through the issuance of awards and, among other things, an annual awards program for the presentation of awards in recognition of distinguished achievement in the field of music.   A true and correct copy of this registration certificate is attached as Exhibit B.

c. U.S. Trademark Registration No. 887,642 (first use 1959) for the GRAMMY word mark, which the PTO issued to the Recording Academy on March 10, 1970 for use in connection with association services, namely, promoting artistic progress and achievement in the field of recording arts and sciences.   A true and correct copy of this registration certificate is attached as Exhibit C.

d. U.S. Trademark Registration No. 2,332,258 (first use 1958) for the GRAMMY word mark, which the PTO issued to the Recording Academy on March 21, 2000 for use in connection with educational services, namely, providing incentives to people to demonstrate excellence in the field of music and video arts and sciences through the issuance of

7

awards.  A true and correct copy of this registration certificate is attached as Exhibit D.

e. U.S. Trademark Registration No. 5,641,780 (first use 2012) for the GRAMMY Award Statuette mark, which the PTO issued to the Recording Academy on January 1, 2019 for use in connection with musical sound recordings.  A true and correct copy of this registration certificate is attached as Exhibit E.

f. U.S. Trademark Registration No. 6,148,106 (first use 2017) for the RECORDING ACADEMY GRAMMY AWARDS and Grammy Award Statuette mark, which the PTO issued to the Recording Academy on September 8, 2020 for use in connection with educational services, namely, providing incentives to people to demonstrate excellence in the field of recording arts and sciences through the issuance of awards.  A true and correct copy of this registration certificate is attached as Exhibit F.

19.     The GRAMMY Registrations are in full force and effect on the PTO's Principal Register and give rise to presumptions in favor of the Recording Academy with respect to validity, ownership, and exclusive rights to use the GRAMMY Marks throughout the United States.  Moreover, several of the GRAMMY Registrations have become incontestable pursuant to 15 U.S.C. § 1065 because several of the registrations were issued over five years ago and the Recording Academy submitted Lanham Act § 15 Affidavits, which the U.S. Trademark Office acknowledged.

20.     As a result of the Recording Academy's extensive use of the GRAMMY Marks nationwide over a period of more than 60 years, significant expenditure of resources to advertise and promote its brand nationwide in a broad variety of trade channels in connection with the GRAMMY Marks, and the undeniable popularity of the annual GRAMMY Awards ceremony and telecast, the GRAMMY Trademarks have a high degree of consumer recognition and have become famous.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

21.     For over 60 years, the Recording Academy has used a statuette incorporating a gramophone design to honor outstanding musical achievements.

22.     Each year, at the annual awards ceremony, GRAMMY Award winners are presented with the following statuette, which displays the winner's name ("GRAMMY Award Statuette"):



23.     The Academy's GRAMMY Award Statuette is an original artwork protected under federal copyright law, such that the Recording Academy holds the exclusive right to display the GRAMMY Award Statuette and images of the GRAMMY Award Statuette.

24.     In line with that right, the Recording Academy regularly uses its GRAMMY Award Statuette as a logo to promote the annual GRAMMY Awards ceremony and telecast.

25.     In fact, each year, in anticipation of the annual GRAMMY Awards ceremony, the Recording Academy creates a specific "telecast" logo that incorporates the GRAMMY Award Statuette and the edition of the GRAMMY Awards show. This telecast logo is prominently used on air during the telecast and in TV, print, online, and billboard advertising to promote the telecast.  The telecast logo from the 63rd Annual GRAMMY Awards telecast (the "63rd GRAMMY Telecast Logo") is featured below:

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**



26.     The logo is also commercialized in limited edition souvenir merchandise such as hats, shirts, mugs, posters and other promotional items and appears on a program book created each year for the GRAMMY Awards ceremony that is distributed to all attendees and is available for sale.  *See* www.grammystore.com.




10

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

27.     In addition to the telecast logo, the GRAMMY Award Statuette is prominently displayed throughout the televised portion of the GRAMMY Awards telecast.  *See* https://www.youtube.com/watch?v=OrreCydJqZY.



28.     As a result of the Recording Academy's extensive, long-term, and continuous use of the GRAMMY Award Statuette nationwide, and the undeniable popularity of the annual GRAMMY Awards ceremony and telecast, the Recording Academy has established trademark rights in the GRAMMY Award Statuette as an indicator of source for a specific awards show.

**Defendants' Use of a Mark that is Confusingly Similar to the GRAMMY Trademarks, and Proprietary Artwork Associated with the 63rd Annual GRAMMY Awards Telecast, including the GRAMMY Award Statuette**

29.     Defendants are well aware of the popularity and fame of the Recording Academy's GRAMMY Trademarks and the goodwill represented and symbolized by these marks.

30.     Nevertheless, with full awareness of that popularity, fame, and goodwill, Defendants have undertaken unfairly and in bad faith to use a mark that is confusingly similar to the GRAMMY Marks, for the purpose of drawing attention to Defendants' event.   Defendants have been unfairly trading off the GRAMMY brand by

11

organizing, hosting, advertising, and selling tickets to an event titled the "CAMMIES."

31.    Tickets for the event were available on Eventbrite, an event management and the ticketing platform, at the following link: www.eventbrite.com/e/calaveras-arts-and-music-awards-tickets-206562944327.

32.    The name "CAMMIES" is highly similar in sight, sound, appearance, and commercial impression to the GRAMMYs, such that Defendants' use of the name "CAMMIES" in connection with the marketing, promotion, advertising, or sale of tickets to their upcoming event constitutes an obvious and intentional infringement on the GRAMMY Marks.

33.    This is particularly true in light of the fact that "CAMMIES" does not even purport to be an abbreviation for anything associated with the event.  Defendants also refer to their event as the Calaveras Arts & Music Awards, which naturally could be abbreviated as the "CAM Awards" or "CAMA."  Defendants' selection of "CAMMIES" makes clear Defendants' intent to trade off the GRAMMY brand.

34.    Defendants are also unlawfully infringing the GRAMMY Trademarks by, among other things, using a mark that is confusingly similar to the GRAMMY Marks, to advertise their event, including but not limited to in promotional materials, such as flyers and tickets, and across social media, such as the following representative profiles and pages Defendants apparently control:

- https://www.eventbrite.com/e/calaveras-arts-and-music-awards-tickets-206562944327
- https://www.facebook.com/calaverasartsandmusicawards/
- https://www.facebook.com/events/580176956425867
- https://www.instagram.com/cammieawards/

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

35.     Upon   information   and   belief,   Defendants   created   the   following advertisements (the "Infringing Artwork") using the well-recognized 63rd GRAMMY Telecast Logo as a foundation.

 

36.     The similarities between the "CAMMIES" event posters and the 63rd GRAMMY Telecast Logo are undeniable.  Such similarities include identical golden backgrounds, the color block gramophone platform (and in at least one instance, the entire gramophone from the GRAMMY Award Statuette), and the event names as the largest, most prominent text, in the exact same location on their respective designs.

37.     In some instances, Defendants' advertising swaps just the gramophone from the GRAMMY Award Statuette for a microphone, but includes the color block gramophone platform, which serves no purpose in the design except to call to mind the GRAMMY brand.  This is not sufficiently different from the GRAMMY Award Statuette to avoid confusion because other distinctive components of the GRAMMY Award Statuette remain present.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

38.     These actions directly infringe the Recording Academy's GRAMMY Trademarks and trade off the popularity of the Recording Academy's Annual GRAMMY Awards.

39.     Given the similarities that exist between the event names the "CAMMIES" and the GRAMMYs, the use of the 63rd GRAMMY Telecast Logo in Defendants' advertising and promotion of their event, and the similar purpose of these events—among other things, to honor excellence in music—the Recording Academy's consumers are likely to mistakenly believe that (1) Defendants' "CAMMIES" are affiliated with, sponsored by, approved by, or associated with the Recording Academy; (2) Defendants' "CAMMIES" are related to the Recording Academy's Annual GRAMMY Awards ceremony; and/or (3) that the tickets the consumer is purchasing for Defendants' "CAMMIES" are to an event sponsored by or associated with the Recording Academy, when in fact they are not.

40.     Indeed, upon information and belief, Defendants' infringing acts as alleged herein have no purpose other than to confuse consumers and to profit from the goodwill and consumer recognition associated with the Recording Academy and its GRAMMY Trademarks.

**Defendants' Continued, Willful Infringement**

41.     On January 7, 2022, having discovered Defendants' unlawful conduct described herein, counsel for the Recording Academy put Defendants on notice that its so-called annual "CAMMIES" recognition awards show infringes the Recording Academy's rights in the GRAMMY Marks.  Specifically, counsel for the Recording Academy asked that "Creative Copperopolis (1) discontinue any and all references to the upcoming Calaveras Arts & Music Awards as the "CAMMIES," (2) recall from all distribution channels any and all products, packaging, advertisements, marketing and promotional materials bearing the word "CAMMIES" and/or the Infringing Artwork, and (3) inform all business partners, such as nominees, sponsors, vendors,

and venue that [the] event is not affiliated with, endorsed by, or sponsored by the Academy."  Counsel for the Recording Academy also asked for acknowledgement of receipt of the letter and compliance with its requests by January 10, 2022.  A true and correct copy of this correspondence is attached as Exhibit G.

42.    As of the date of this filing, Defendants have not responded to the Recording Academy's January 7, 2022 correspondence, despite adding a singular disclaimer on the Creative Copperopolis website that Defendants' event has "no affiliation to Grammys or NARAS whatsoever."

43.    Yet, the social media pages referenced above at ¶ 34 are still active and continue to reflect the very kinds of promotional and other uses of the name "CAMMIES" which infringes upon the GRAMMY Marks and Recording Academy's rights.  *See* examples attached as Exhibit H.

44.    Defendants' failure to comply with the Recording Academy's demands demonstrates a deliberate intent to continue to wrongfully compete with the Recording Academy and to willfully infringe the Recording Academy's rights in the GRAMMY Trademarks.

45.    Defendants' unlawful activities have likely already resulted in consumer confusion and are irreparably injuring the Recording Academy.  Defendants' conduct and the harm caused to the Recording Academy will continue unless and until halted by this Court.   The Recording Academy seeks injunctive relief, corrective advertising, disgorgement of profits made by Defendants attributable to their infringement of the GRAMMY Marks, including but not limited to all profits earned from Defendants' sale of tickets to the "CAMMIES," treble damages based on Defendants' willful conduct, punitive damages and reasonable attorneys' fees.

## **COUNT I**

### **TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114**

46.    The Recording Academy repeats and realleges every allegation contained in paragraphs 1-45 as though fully set forth herein.

47.    The GRAMMY Trademarks are inherently distinctive, strong, valid, and protectable trademark owned by the Recording Academy.

48.    Defendants' use of the word "CAMMIES" in any and all capacities and use of the Infringing Artwork (the "Infringing Acts") in connection with their upcoming Calaveras Arts & Music Awards are infringing the Recording Academy's GRAMMY Trademarks.

49.    Defendants' Infringing Acts have caused and/or are likely to cause confusion, mistake, or deception as to the source or sponsorship of the event and sale of tickets and/or is likely to lead the consuming public to believe that the Recording Academy has authorized, approved, or somehow sponsored Defendants' event.

50.    Defendants' Infringing Acts are and have been without the consent or authorization of the Recording Academy and for commercial purposes.

51.    The actions of Defendants described above and specifically, without limitation, Defendants' use of the word "CAMMIES" in connection with their upcoming Calaveras Arts & Music Awards and use of the Infringing Artwork constitute trademark infringement in violation of 15 U.S.C. § 1114.

52.    The Recording Academy has been, and will continue to be, damaged and irreparably harmed by the actions of Defendants, which will continue unless Defendants are enjoined by this Court.  The Recording Academy has no adequate remedy at law in that the amount of damage to the Recording Academy's reputation and the diminution of the goodwill of the GRAMMY Trademarks is difficult to ascertain with specificity.  The Recording Academy is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

53.     The Recording Academy is entitled to recover damages in an amount to be determined at trial and the profits made by Defendants on the sales of tickets to its event the "CAMMIES."   Furthermore, the Recording Academy is informed and believes, and on that basis alleges, that the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, and deception, making this an exceptional case entitling the Recording Academy to recover treble damages, reasonable attorneys' fees, and costs pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

## COUNT II

## FALSE ASSOCIATION AND/OR FALSE DESIGNATION IN VIOLATION OF 15 U.S.C. § 1125(a)(1)(A)

54.     The Recording Academy repeats and realleges every allegation contained in paragraphs 1-53 as though fully set forth herein.

55.     Defendants have used in commerce and without the Recording Academy's authorization or consent, marks confusingly similar to the GRAMMY Trademarks, in connection with Defendants' event, the "CAMMIES," including the marketing and promotion thereof.

56.     Defendants' actions as described herein have caused and are likely to cause confusion and deception among the consuming public and are likely to lead the consuming public to believe that the Recording Academy has authorized, approved, or somehow sponsored Defendants' "CAMMIES" event and the awards Defendants present at that event.

57.     Defendants' actions constitute false association and false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

58.     The Recording Academy has been, and will continue to be, damaged and irreparably harmed by the actions of Defendants, which will continue unless Defendants are enjoined by this Court.   The Recording Academy has no adequate

17

1  remedy at law in that the amount of damage to the Recording Academy's reputation

2  and the diminution of the goodwill of the GRAMMY Trademarks is difficult to

3  ascertain with specificity.  The Recording Academy is therefore entitled to injunctive

4  relief pursuant to 15 U.S.C. § 1116.

5        59.    The Recording Academy is entitled to recover damages in an amount to

6  be determined at trial and the profits made by Defendants on the sales of tickets to its

7  event the "CAMMIES."  Furthermore, the Recording Academy is informed and

8  believes, and on that basis alleges, that the actions of Defendants were undertaken

9  willfully and with the intention of causing confusion, mistake, and deception, making

10  this an exceptional case entitling the Recording Academy to recover treble damages,

11  reasonable attorneys' fees, and costs pursuant to Section 35 of the Lanham Act, 15

12  U.S.C. § 1117, as well as prejudgment interest.

13  

**COUNT III**

14  

**UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(a)(1)(A)**

15        60.    The Recording Academy repeats and realleges every allegation

16  contained in paragraphs 1-59 as though fully set forth herein.

17        61.    Defendants have used in commerce and without the Recording

18  Academy's authorization or consent, marks confusingly similar to the GRAMMY

19  Trademarks, in connection with Defendants' marketing and sale of tickets to the

20  "CAMMIES."

21        62.    Defendants' actions as described herein are likely to cause confusion and

22  deception among the consuming public and are likely to lead the consuming public to

23  believe that the Recording Academy has authorized, approved, or somehow

24  sponsored Defendants' "CAMMIES" event.

25        63.    Defendants' actions constitute false association, false designation of

26  origin, and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

27

28

18

64.     The Recording Academy has been, and will continue to be, damaged and irreparably harmed by the actions of Defendants, which will continue unless Defendants are enjoined by this Court.  The Recording Academy has no adequate remedy at law in that the amount of damage to the Recording Academy's reputation and the diminution of the goodwill of the GRAMMY Trademarks is difficult to ascertain with specificity.  The Recording Academy is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

65.     The Recording Academy is entitled to recover damages in an amount to be determined at trial and the profits made by Defendants on the sales of tickets to the "CAMMIES."  Furthermore, the Recording Academy is informed and believes, and on that basis alleges, that the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, and deception, making this an exceptional case entitling the Recording Academy to recover treble damages, reasonable attorneys' fees, and costs pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, as well as prejudgment interest.

## COUNT IV

### FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(a)(1)(B)

66.     The Recording Academy repeats and realleges every allegation contained in paragraphs 1-65 as though fully set forth herein.

67.     Defendants have used in commerce and without the Recording Academy's authorization or consent, marks confusingly similar to the GRAMMY Trademarks, in connection with Defendants' advertising, promotion of and sale of tickets to the "CAMMIES."

68.     Defendants' actions as described herein misrepresent the nature, characteristics, and qualities of the Defendants' upcoming event/awards ceremony.

69.     Defendants' actions constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

70.     The Recording Academy has been, and will continue to be, damaged and irreparably harmed by the actions of Defendants, which will continue unless Defendants are enjoined by this Court.  The Recording Academy has no adequate remedy at law in that the amount of damage to the Recording Academy's reputation and the diminution of the goodwill of the GRAMMY Trademarks is difficult to ascertain with specificity.  The Recording Academy is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

71.     The Recording Academy is entitled to recover damages in an amount to be determined at trial and the profits made by Defendants on the sales of tickets to the "CAMMIES."  Furthermore, the Recording Academy is informed and believes, and on that basis alleges, that the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, and deception, making this an exceptional case entitling the Recording Academy to recover treble damages, reasonable attorneys' fees, and costs pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, as well as prejudgment interest.

## COUNT V

## TRADEMARK DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c)

72.     The Recording Academy repeats and realleges every allegation contained in paragraphs 1-71 as though fully set forth herein.

73.     The Recording Academy is the owner of the GRAMMY Trademarks, which is and has become famous by virtue of, *inter alia*, its strong brand recognition, extent of use, extent of advertising, publicity, and nationwide usage.

74.     Defendants' foregoing willful and bad faith acts dilute and tarnish, and are likely to and will continue to dilute and tarnish, the distinctive qualities of the Recording Academy's trademark in violation of Section 43 of the Lanham Act, 15 U.S.C. 1125(c).

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

75.     Defendants' infringing use began after the GRAMMY Trademarks became famous.

76.     Defendants' acts described above have and will continue to impair the GRAMMY Marks' ability to act as distinctive identifiers of source or origin, tarnish the GRAMMY Marks and harm their reputation, and diminish the integrity of the products and services with which the GRAMMY Marks are associated.

77.     The Recording Academy has been, and will continue to be, damaged and irreparably harmed by the actions of Defendants, which will continue unless Defendants are enjoined by this Court.  The Recording Academy has no adequate remedy at law in that the amount of damage to the Recording Academy's reputation and the diminution of the goodwill of the GRAMMY Trademarks is difficult to ascertain with specificity.  The Recording Academy is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

78.     The Recording Academy is entitled to recover damages in an amount to be determined at trial and the profits made by Defendants on the sales of tickets to the "CAMMIES."  Furthermore, the Recording Academy is informed and believes, and on that basis alleges, that the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, and deception, making this an exceptional case entitling the Recording Academy to recover treble damages, reasonable attorneys' fees, and costs pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, as well as prejudgment interest.

## COUNT VI

### COMMON LAW TRADEMARK INFRINGEMENT

79.     The Recording Academy repeats and realleges every allegation contained in paragraphs 1-78 as though fully set forth herein.

80.     Defendants' conduct, as described above, concerning Defendants' "CAMMIES" event, including but not limited to Defendants' use of the word

21

1  "CAMMIES" in connection with their upcoming Calaveras Arts & Music Awards

2  and use of the Infringing Artwork, constitutes trademark infringement in violation of

3  the common law of California.

4       81.    As a direct and proximate result of Defendants' conduct alleged herein,

5  the Recording Academy has suffered injury and has lost money or property, causing

6  damage to the Recording Academy in an amount to be determined at trial.

7       82.    Defendants' acts have caused, and will continue to cause, irreparable

8  injury to the Recording Academy and its business, reputation, and trademarks, unless

9  and until Defendants are permanently enjoined.

10  **<u>COUNT VII</u>**

11  **TRADEMARK DILUTION**

12  **IN VIOLATION OF CAL. BUS. & PROF. CODE § 14247**

13       83.    The Recording Academy repeats and realleges every allegation

14  contained in paragraphs 1-82 as though fully set forth herein.

15       84.    The Recording Academy is the owner of the GRAMMY Trademarks,

16  which is famous and distinctive within the meaning of Cal. Bus. & Prof. Code

17  §14247.

18       85.    Defendants' infringing use began after the GRAMMY Trademarks

19  became famous.

20       86.    Defendants' continued use of the GRAMMY Trademarks is likely to

21  cause dilution of the distinctive quality of the Recording Academy's famous

22  GRAMMY Trademarks and injury to the Recording Academy's business and

23  reputation.

24       87.    The Recording Academy has been, and will continue to be, damaged and

25  irreparably harmed by the actions of Defendants, which will continue unless

26  Defendants are enjoined by this Court.  The Recording Academy has no adequate

27  remedy at law in that the amount of damage to the Recording Academy's reputation

28

22

and the diminution of the goodwill of the GRAMMY Trademarks is difficult to ascertain with specificity.  The Recording Academy is therefore entitled to injunctive relief pursuant to Cal. Bus. & Prof. Code § 14247.

88.    On information and belief, the actions of Defendants described herein were and continue to be deliberate and willful.  The Recording Academy is therefore entitled to the remedies set forth in Cal. Bus. & Prof. Code § 14250, including recovery in an amount to be determined at trial of up to three times Defendants' profits from, and up to three times all damages suffered by reason of, Defendants' sale of tickets to the "CAMMIES."

## COUNT VIII

### UNFAIR OR DECEPTIVE ACTS OR PRACTICES

### IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, *et seq*.

89.    The Recording Academy repeats and realleges every allegation contained in paragraphs 1-88 as though fully set forth herein.

90.    Members of the public are likely to be confused and deceived into believing that Defendants' "CAMMIES" ceremony is sponsored by or affiliated with the Recording Academy.

91.    Defendants' conduct as described herein constitutes unfair, unlawful and/or fraudulent business practices that have injured and will continue to injure the Recording Academy's business in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

92.    Defendants' acts have caused, and will continue to cause, irreparable injury to the Recording Academy and its business, reputation, and trademarks, unless and until Defendants are permanently enjoined.

93.    As a direct and proximate result of Defendants' conduct alleged herein, Defendants have been unjustly enriched and should be ordered to disgorge any and all profits earned as a result of such unfair, unlawful and/or fraudulent conduct.

## COUNT IX

**FALSE ADVERTISING**

**IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17500, *et seq*.**

94.    The Recording Academy repeats and realleges every allegation contained in paragraphs 1-93 as though fully set forth herein.

95.    Defendants' conduct, as described above concerning Defendants' "CAMMIES" event and constitutes the dissemination of untrue and misleading statements, which Defendants know, or should have known by the exercise of reasonable care, are untrue or misleading.

96.    Defendants' conduct as described above is in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq*.

97.    As a direct and proximate result of Defendants' conduct alleged herein, the Recording Academy has suffered injury and has lost money or property as a result of such untrue or misleading statements, causing damage to the Recording Academy in an amount to be determined at trial.

98.    Defendants' acts have caused, and will continue to cause, irreparable injury to the Recording Academy and its business, reputation, and trademarks, unless and until Defendants are permanently enjoined.

## PRAYER FOR RELIEF

WHEREFORE, the Recording Academy prays for judgment as follows:

1.    An order enjoining Defendants, their officers, agents, servants, employees, representatives, successors, and assigns, and all persons or entities acting in concert or participation with any or all of them, from engaging or participating in, either directly or indirectly, any and all of the following conduct:

(a)    Using, displaying, or incorporating the "CAMMIES" name in connection with the marketing, promotion, advertising, or sale of tickets to any events or awards ceremonies, including but not limited to the upcoming "Calaveras Arts &

24

Music Awards" event and awards ceremony currently scheduled to proceed on January 15, 2022; and

    (b) Using, displaying, or incorporating the Infringing Artwork in connection with the marketing, promotion, advertising, or sale of tickets to any events or awards ceremonies, including but not limited to the upcoming "Calaveras Arts & Music Awards" event and awards ceremony currently scheduled to proceed on January 15, 2022;

  2. Directing that Defendants publish notices to all media and purchasers of tickets to their event the "CAMMIES" (a) advising of their unlawful use of the "CAMMIES," a name confusingly similar to the GRAMMY Trademarks; (b) stating that Defendants had no authority to use the GRAMMY Trademarks or any confusingly similar name; and (c) stating that Defendants and their event are not affiliated with, endorsed by, or sponsored by the Recording Academy;

  3. Directing that Defendants recall from the trade and all distribution channels any and all products, packaging, advertisements, marketing and promotional materials bearing the word "CAMMIES" and/or the Infringing Artwork;

  4. Directing that Defendants recall from the trade and all distribution channels any and all products, packaging, advertisements, marketing and promotional materials, including without limitation awards or statues, that resemble the GRAMMY Award Statuette;

  5. Directing that Defendants be required to file with the Court and serve on the Recording Academy, within ten (10) days after entry of a final injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

  6. Directing that Defendants account to the Recording Academy for all gains, profits, revenues and advantages derived from their wrongful conduct described herein;

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

7.     Directing that Defendants pay the Recording Academy such damages as it has sustained as a consequence of Defendants' wrongful conduct described herein, with the precise amount to be determined at trial;

8.     Directing that Defendants pay the Recording Academy punitive damages, in an amount to be determined at trial, as a result of Defendants' malicious, wanton and/or oppressive conduct pursuant to Cal. Civ. Code § 3294;

9.     Directing that Defendants pay the Recording Academy three times all of Plaintiffs' damages suffered as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act, as well as the Recording Academy's costs, attorneys' fees, and expenses in this suit under Cal. Bus. & Prof. Code §§ 14247 and 14250 and because this is an "exceptional case" under Section 35 of the Lanham Act, 15 U.S.C. § 1117;

10.    Directing that Defendants pay to the Recording Academy pre- and post-judgment interest;

11.    Directing such other action as the Court may deem just and proper to prevent the trade and public from deriving the mistaken impression that any products or services offered, advertised, or promoted by or on behalf of Defendants are authorized by or affiliated with the Recording Academy or related any way to the Recording Academy's products or services; and

12.    Granting the Recording Academy such other and further relief as the Court may deem just and proper.

DATED:  January 12, 2022

Sandra A. Crawshaw-Sparks
Alyson C. Tocicki
PROSKAUER ROSE LLP

 /s/ *Sandra A. Crawshaw-Sparks*
Sandra A. Crawshaw-Sparks

Attorneys for Plaintiff,
National Academy of Recording Arts &
Sciences, Inc.

26

## **DEMAND FOR JURY TRIAL**

Plaintiff National Academy of Recording Arts & Sciences, Inc. hereby demands a trial by jury.

DATED:  January 12, 2022

                                                        Sandra A. Crawshaw-Sparks
                                                         Alyson C. Tocicki
                                                         PROSKAUER ROSE LLP

                                            */s/ Sandra A. Crawshaw-Sparks*
                                                                   Sandra A. Crawshaw-Sparks

                                                         Attorneys for Plaintiff
                                                         National Academy of Recording Arts &
                                                         Sciences, Inc.

---

**DEMAND FOR JURY TRIAL**